IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GAYLE L. R.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

        Defendant.

Case No. 3:18-cv-00083-TC

OPINION AND ORDER

COFFIN, Magistrate Judge:

Plaintiff Gayle R. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits ("DIB"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

On October 11, 2013, plaintiff applied for DIB, alleging disability as of February 21, 2012. Tr. 167-73. Her application was denied initially and upon reconsideration. Tr. 117-21, 123-25. On October 6, 2016, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 35-84. On November 25, 2016, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Social Security Act. Tr. 20-29. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## STATEMENT OF FACTS

Born in 1951, plaintiff was 60 years old on the alleged onset date and 64 years old at the time of the hearing. Tr. 39, 167. She graduated from high school and completed one year of college. Tr. 41, 211. Plaintiff worked previously as bus driver and drug/alcohol program specialist for Trimet. Tr. 62, 65-71, 212. Plaintiff alleges disability due to fibromyalgia, chronic pain, bursitis, hypertension, sleep problems, and post-traumatic stress disorder ("PTSD"). Tr. 210.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of

the evidence are insignificant if the Commissioner's interpretation is rational. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the

national or local economy. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 22. At step two, the ALJ determined the following impairments were medically determinable and severe: "degenerative disc disease, bilateral shoulder degenerative joint disease, bursitis, fibromyalgia, and obesity." Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 24.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform light work as defined by 20 C.F.R. § 404.1567(b) except that:

> she can stand and walk for a combined total of six hours and can sit for a total of six hours in an eight-hour day. [Plaintiff] can frequently push and pull; frequently climb ramps, stairs, ladders, ropes, and scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. [She] can frequently reach overhead.

Id.

At step four, the ALJ determined, based on the VE's testimony, that plaintiff could perform her past relevant work as a drug/alcohol program specialist as actually performed and therefore was not disabled. Tr. 29.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to find her mental health conditions severe at step two; (2) rejecting the medical opinion of chiropractor Arah McLaughlin; and (3) finding she could return to her past relevant work at step four.

Page 4 – OPINION AND ORDER

I.  **Step Two Finding**

Plaintiff contends the ALJ erred by omitting her depression and PTSD as severe impairments at step two. Pl.'s Opening Br. 9-12 (doc. 13). At step two, the ALJ determines whether the claimant has an impairment that is both medically determinable and severe. 20 C.F.R. § 404.1520(c). An impairment is severe if it "significantly limit[s]" the claimant's ability to do basic work activities, which are defined as "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521. An impairment is medically determinable if it is diagnosed by an acceptable medical source and based upon acceptable medical evidence. SSR 96-4p, available at 1996 WL 374187; 20 C.F.R. § 404.1513(a). The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted).

At step two, the ALJ determined plaintiff's degenerative disc disease, bilateral shoulder degenerative joint disease, bursitis, fibromyalgia, and obesity were medically determinable and severe. Tr. 22. The ALJ also thoroughly summarized medical evidence pertaining to plaintiff's mental impairments and found that they were medically determinable but not severe because the record demonstrated "improvement with resolution of situational stressors." Tr. 22-23. As such, "[a]ny alleged error at step two was harmless because step two was decided in [plaintiff's] favor with regard to other ailments." Mondragon v. Astrue, 364 Fed. Appx. 346, 348 (9th Cir. 2010).

Further, in formulating plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and cited to the pertinent regulations. Tr. 24. This analysis entailed evaluation of the medical record as well as plaintiff's and her husband's (David R.) allegations. Tr. 24-29. Plaintiff does not challenge the ALJ's assessment of her and David R.'s testimony on

Page 5 – OPINION AND ORDER

appeal,[2] and there is no medical evidence reflecting that plaintiff suffers from any concrete functional restrictions related to her mental health conditions.

In fact, plaintiff did not endorse any psychological symptoms to her providers outside of the initial period following her retirement from Trimet in May 2012. By November 2012, plaintiff was "so much better" and "sleeping well" – she had "let go of attachments to past wrongs and traumas . . . [and was] doing really great and has blossomed in health and insight." Tr. 417; see also Tr. 406-07, 618-19 (reporting no sleep disturbance or mental health symptoms in December 2012 and January 2013). Although the record reflects that plaintiff experienced occasional flare ups of her back pain and situational stressors thereafter, she did not report any significant disruption in functioning due to depression or PTSD, and her psychiatric examinations were largely within normal limits. See, e.g., Tr. 566, 584, 594, 608, 618, 780; see also Tr. 945-46 (treating physician, Julie Yeggy, M.D., opining in October 2016 that plaintiff did not suffer from any attention or concentration problems); Tr. 59-60 (plaintiff denying the existence of any memory problems at the hearing and reporting that she likes to stay "intellectually active").

Significantly, plaintiff did not seek any mental health counseling until more than two years after she retired,[3] which she terminated after less than two months of treatment. Tr. 737-40. During

---

[2] For the first time in her reply brief, plaintiff asserts the ALJ erred at step two by wrongfully rejecting her and David R.'s testimony concerning mental health symptoms. Pl.'s Reply Br. 3-4 (doc. 15). The Court, however, need not consider arguments first raised in a reply brief. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1289 n.4 (9th Cir. 2000). In any event, as discussed herein, the medical record and plaintiff's daily activities are inconsistent with both her and her husband's subjective symptom statements.

[3] As noted above, plaintiff retired from Trimet in May 2012, approximately three months after the alleged onset date. Tr. 196. The February 2012 alleged onset date coincides with an incident plaintiff had at work wherein a bus passenger became confrontational, yelling in her face and inadvertently transmitting saliva into her eyes. Tr. 378-79. Plaintiff experienced trauma related to this incident for which she briefly sought counseling. Tr. 341-43. Thus, the record does not contain any evidence of mental health treatment from April 2012 through June 2014.

Page 6 – OPINION AND ORDER

her final session in August 2014, plaintiff stated: "since retiring she has had no outstanding stress and the PTSD symptoms seem to have resided." Tr. 740. While plaintiff reported some lingering symptoms – namely, "hypervigilance" and "occasional nightmares" – she nonetheless did not feel that counseling was necessary in light of her "numerous adaptive coping strategies" and "very supportive" husband. Id.

Moreover, plaintiff engaged in a wide-slate of daily activities during the adjudication period, such as socializing with friends multiple times per week, exercising, driving, occasionally babysitting her great grandchild, attending church services and activities, travelling, and operating a seasonal cookie business. See, e.g., Tr. 40-41, 47, 384, 566, 584, 607, 737, 780, 791, 802, 816. In other words, as the ALJ reasonably concluded, the record "shows that [plaintiff's mental health symptoms] were not persistent and did not result in significant functional limitations." Tr. 23.

In sum, the ALJ adequately accounted for plaintiff's medically determinable and severe impairments at step two. Even assuming the ALJ erred, because the ALJ's sequential evaluation considered the effects of all of plaintiff's alleged symptoms, any purported error at step two was harmless. Burch, 400 F.3d at 682-83. The ALJ's step two finding is affirmed.

## II. Medical Opinion Evidence

Plaintiff asserts the ALJ failed to address and, thus, improperly rejected the medical opinion of her chiropractor, Dr. McLaughlin. Pl.'s Opening Br. 12-13 (doc. 13). While only "acceptable medical sources" can diagnose and establish the existence of a medical impairment, evidence from "other sources" can be used to determine the severity of that impairment and how it affects the claimant's ability to work. 20 C.F.R. §§ 404.1513, 404.1527(f). Nonacceptable medical sources include chiropractors. 20 C.F.R. §§ 404.1502(a), 404.1513; SSR 06-03p, available at 2006 WL 2329939. To disregard the opinion of a nonacceptable medical source, the ALJ need

only provide a reason that is germane to that witness. Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1223-24 (9th Cir. 2010). "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted).

Plaintiff established chiropractic care with Dr. McLaughlin in May 2011, which entailed "stretches passive and active, manual therapy, heat and home exercises." Tr. 330. In February 2014, Dr. McLaughlin opined that plaintiff could only carry 10 pounds, "sit for 20 minutes before having to shift," and "stand for 10 minutes at the maximum." Id.

The ALJ's discussion of Dr. McLaughlin's opinion is as follows:

During a chiropractic visit in February 2014, [plaintiff] reported that she could sit for 20 minutes, stand for 10 minutes, carry 10 pounds, and said that she did not bend because it increased nerve pain in her low back. [Plaintiff] told the chiropractor that her physical therapist and pain clinic physicians limited her to three "outside the house activities"; however, this is not corroborated in the treatment records, and no significant examination findings are noted in the chiropractic records that would support [plaintiff's] reported limitations.

Tr. 26.

As such, contrary to plaintiff's assertion, the ALJ did not ignore Dr. McLaughlin's opinion. Although the ALJ's discussion does not assign a particular weight to Dr. McLaughlin, it can nonetheless be reasonably inferred that the ALJ rejected this opinion because it was based on plaintiff's self-reports and inconsistent with the medical record.[4] See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (court may make reasonable inferences from the ALJ's decision).

---

[4] Plaintiff asserts that no such reasonable inference exists because the ALJ's discussion of Dr. McLaughlin's opinion "is part of the summarized evidence portion of the ALJ's decision." Pl.'s Reply Br. 4-5 (doc. 15). Yet precedent make clear that the ALJ's reasoning need not include any "magic words" or be outlined within any particular format. See, e.g., Magallanes, 881 F.2d at 755. The dispositive issue is whether the ALJ set out a detailed summary of the facts and conflicting evidence, stated his or her interpretation, and made findings. Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600-01 (9th Cir. 1999). That is precisely what transpired here. Tr. 24-28.

Page 8 – OPINION AND ORDER

An ALJ may disregard a medical opinion that is inconsistent with the record. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ properly rejects "the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings"). An ALJ also need not accept a medical opinion that is based predominantly on the claimant's discredited subjective symptom statements. Turner, 613 F.3d at 1217.

Here, substantial evidence supports the ALJ's conclusion. There are no clinical findings accompanying Dr. McLaughlin's report, nor is there any indication from the record before the Court that Dr. McLaughlin physically examined plaintiff for the purposes of determining her functional abilities. In contrast, John Ellison, M.D., performed a comprehensive musculoskeletal examination of plaintiff in June 2014, which yielded "essentially negative" results. Tr. 734-36. Furthermore, the context of Dr. McLaughlin's opinion indicates that the restrictions outlined therein were based exclusively on plaintiff's self-reported abilities. For instance, Dr. McLaughlin indicated that plaintiff could stand for only 10 minutes because "[s]he reports having to cook and clean the kitchen in 10 minute intervals." Tr. 330. Therefore, reversal is not warranted in regard to this issue.

### III. Step Four Finding

Plaintiff argues the ALJ erred in determining she could perform her past relevant work. Pl.'s Opening Br. 4-9 (doc. 13). Specifically, plaintiff contends that "a shuttle driver is a medium

---

Nevertheless, even assuming the ALJ's discussion of Dr. McLaughlin's opinion was insufficient to meet this standard, the ALJ articulated legally sufficient reasons, supported by substantial evidence, for rejecting similar testimony from plaintiff and David. R. Id. Accordingly, any failure to address Dr. McLaughlin's report would have been harmless. See Molina, 674 F.3d at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

Page 9 – OPINION AND ORDER

job per the DOT" and the record is ambiguous regarding how much weight plaintiff lifted/carried when performing this job, such that the ALJ erred by "fail[ing] to obtain testimony regarding the actual amount of frequency of weight [plaintiff] lifted/carried in the position."[5] Id.

At step four, the claimant bears the burden of proving that she cannot perform her past relevant work "either as actually performed or as generally performed in the national economy." Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008) (citations and internal quotations omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted). Such findings are premised on a comparison of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. Id. (citation omitted); 20 C.F.R. § 404.1520(f).

The best source for resolving how a job is generally performed is the Dictionary of Occupational Titles ("DOT"). Pinto, 249 F.3d at 845-56 (citation omitted). "[T]o define a claimant's past relevant work as actually performed," the ALJ may rely on "a properly completed vocational report and the claimant's own testimony." Id. at 845 (internal citations omitted). The VE may also offer testimony concerning the physical and mental demands of the claimant's past relevant work, either as actually or generally performed, especially where, as here, the past relevant

---

[5] Plaintiff also argues her bilateral shoulder degenerative joint disease and severe mental impairments preclude her past relevant work as actually performed, she is otherwise unable to complete her past relevant work as generally performed in the national economy, and the ALJ improperly relied on her activities of daily living. Pl.'s Opening Br. 4-9 (doc. 13). Regarding plaintiff's first contention, plaintiff does not cite to, and an independent review of the record does not reveal, any medical evidence evincing that she is cannot perform work consistent with the ALJ's RFC. See generally id.; Pl.'s Reply Br. (doc. 15). Concerning plaintiff's second contention, the ALJ's step four finding is premised exclusively on the determination that plaintiff could return to her past relevant work as actually performed. Finally, the ALJ made no mention of plaintiff's daily activities in resolving step four. Tr. 29.

Page 10 – OPINION AND ORDER

work constitutes a "composite job" – i.e., a job that has "significant elements of two or more [DOT] occupations." SSR 82-61, available at 1982 WL 31387; 20 C.F.R. § 404.1560(b)(2).

Plaintiff explained that, when working as a drug/alcohol program specialist, her primary responsibilities were to organize and coordinate random drug and alcohol tests for "safety sensitive" Trimet employees, and then to transport each employee to a facility where a specimen could be given. Tr. 61, 63-68, 234. Plaintiff indicated that she was required to maintain a master list each month of the employees who were tested, and to complete some additional record keeping and paperwork. Tr. 68. In terms of lifting/carrying requirements, plaintiff testified at the hearing: "Other than my briefcase, [I lifted] nothing." Tr. 69; see also Tr. 234 (plaintiff stating in her work history form that lifting/carrying was confined to her "briefcase – my entire office was in my briefcase"). At the end of the hearing, plaintiff reiterated that she "never lifted more than 20 pounds" in her work as a drug/alcohol program specialist. Tr. 83.

Based on plaintiff's testimony, the VE characterized plaintiff's past relevant work as a composite job, comprised of the following two occupations: administrative clerk, DOT § 219.362-010; and shuttle driver, DOT § 213.662-018. Tr. 68-69. The VE identified the administrate clerk position as light exertion per the DOT and the shuttle driver position as medium exertion per the DOT (i.e., as generally performed). Tr. 69. However, given plaintiff's testimony, the VE asserted that "it doesn't sound like she performed the [shuttle driver portion] at the medium range" and instead found that it was "probably performed at the light range." Id.; see also Tr. 62 (VE testifying that, according to the record, plaintiff performed her past relevant work at the light exertion level). The VE explained further:

> I think [the shuttle driver position] is described as medium work [in the DOT because] the person could have to do things like clean and service the vehicle. And, they may have to do things like assist passengers in and out of the vehicles. They may have to – if the person has a disability, they may have to deal with wheelchairs

Page 11 – OPINION AND ORDER

and things like that. So, I think it sounds like her fellow coworkers [performed those types of tasks], so that's probably why she didn't have to do any lifting more than at the light range.

Tr. 70.

Accordingly, the VE testified that, given plaintiff's RFC, she could perform her past relevant work as a drug/alcohol program specialist as actually performed. Tr. 72-74, 78-79. In reaching a determination at step four, the ALJ cited to the pertinent regulations, considered the mental and physical demands of plaintiff's past relevant work and RFC, and explicitly relied on the VE's testimony to conclude that plaintiff was "able to perform [her past relevant work] as actually performed." Tr. 29.

Initially, the Court finds that the record already contains the additional testimony plaintiff alleges is missing on appeal. Indeed, the VE sought clarification at the end of the hearing concerning the lifting requirements of plaintiff's shuttle driving work, which plaintiff confirmed did not entail more than 20 pounds. Tr. 83. Moreover, other portions of the record make clear that the only thing plaintiff lifted and carried in her work as a drug/alcohol program specialist was a briefcase. Tr. 68-69, 234. As the Commissioner denotes, "[e]ven if [plaintiff] carried a full ream containing 500 sheets of paper in her briefcase, that would have weighed a mere five or six pounds." Def.'s Resp. Br. 6 (doc. 14) (citation omitted).

Given this evidence, plaintiff's reliance on her work history form to create an ambiguity is misplaced. In that form, plaintiff checked boxes reflecting that: (1) 20 pounds was the heaviest weight she lifted; but (2) she frequently lifted 25 pounds. Tr. 234. As plaintiff's counsel readily admits, plaintiff's responses "demonstrat[e] there was a misunderstanding of the questions." Pl.'s Opening Br. 6 (doc. 13). Regardless, because plaintiff subsequently elucidated at the hearing that she never lifted more than 20 pounds while working as a drug/alcohol program specialist – and,

even within this form, indicated that lifting/carrying was limited to her briefcase – there is no ambiguity in the record. Stated differently, the record establishes that the lifting/carrying requirements of plaintiff's past relevant work fell within the light exertion range. The ALJ's step four finding is upheld.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 25 day of January 2019.

Thomas M. Coffin
United States Magistrate Judge